■ In the Matter of the Claim of ROSE PALMERO, Respondent, against SAMUEL GALLUCCI & SONS, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— This is an appeal from a decision of the board which reversed the findings of the referee and found that the death of the decedent on July 31, 1954 was due to a coronary occlusion and thrombosis

which was causally related to the accident of July 1, 1954. On the above date, decedent while working for his employer as a truck driver was involved in an automobile accident and received injuries which arose out of and in the course of his employment. As a result of the collision he was thrown from the truck, landing on the pavement and was unconscious for some short period immediately following. He was taken to the hospital where he was examined, X-ray pictures were taken of the skull which were negative and on the following day he was seen by Dr. Arnold Nathan. Dr. Nathan testified that he examined but did not treat the decedent, recommended that he go into the hospital for observation and on his report indicated that he had one week of disability. It appears from the record that as a result of the automobile accident, he had injuries to the right side of his face, right arm, back and chest, contusion and abrasion on the right forehead, swelling and abrasion of the right vertex, tenderness and stiffness of the right shoulder, abrasion of the right hypochondrium and cerebral concussion. Within a few days decedent returned to work. He returned to Dr. Nathan on July 22 complaining of loss of hearing but not about his heart or his chest. On July 31, 1954, approximately 30 days following the accident, after driving to his summer home he became severely ill. He was attended by Dr. Polikronas F. Kusa who said that in obtaining the history, the decedent or someone present stated that he had never had this kind of pain before. He was removed to the hospital and died soon thereafter. It is not disputed that death was due to a coronary thrombosis. An autopsy was performed and as a result of microscopic examination of the heart, the said report stated as follows: "Heart—Old myocardial scarring. Coronary atheromatosis, sclerosis, calcification and stenosis and occlusion by layered adherent thrombus at site of inflammatory reaction." The sole question, was there a causal relationship between the cause of death on July 31, 1954 and the automobile accident in which he was involved on July 1 of the same year. The claimant-respondent produced Dr. Nathan, a cardiologist who had examined the decedent on the dates mentioned above and in answer to a hypothetical question he stated that "there may be a causal relation" and the basis for his opinion was that chest injuries may result in heart damage producing death which may occur within a short time or up to six weeks following the injury and he further testified as follows: "Coronaries lie close to the surface and produce an injury to the artery, particularly if it is sclerotic, as this one was. This then results in a reaction where we have the production of or clotting of blood within the vessel wall at the site of the injury. And we have the resultant coronary occlusion." He stated as a result of the review of the microscopic findings at the time of the autopsy "that there has been some time elapsed since the onset, which may be measured in one to three or four weeks. Some period lapsed since this thrombosis occurred. Otherwise it wouldn't be adherent and it wouldn't be layered. If it were immediate thing it would be a simple, plain, non-adherent thrombus that had blocked the opening." At another point he stated that the occlusion was more than 48 hours old. The carrier called Dr. P. Jerome Laviano, who was a coroner of Suffolk County. He was not a cardiologist but he had discussed the microscopic findings with the doctor who had performed the autopsy. There was no dispute as to the cause of death between either of the doctors but it was the opinion of Dr. Laviano that the thrombosis was a relatively fresh one indicated by its red color and "We could place the time as possibly two or three days, maybe one week, but certainly not longer than two weeks, definitely not longer than two weeks." It was his conclusion that the throm-

bosis was not due to the accident but was something that developed later. He based his opinion as follows: "Now, if the thrombus was caused by an injury to the heart, then you would have an immediate deposition or combination of white blood cells and red blood cells. They would be caught contemporaneously. But since the microscopic studies showed that the white blood cells were the first ones caught and formed a layer and then the red blood cells were caught, the conclusion has to be that it was a natural process and not an injury that caused the thrombus to form." On further examination he stated as follows: "In a fall of that type, in a blow of that type, there is no doubt that the heart as well as the other contents of the chest cavity will be shaken up. However the autopsy does not give any evidence of any structural changes". He was later asked "May a fall, such as this deceased sustained initiate a slight coronary thrombosis?" His answer was "A fall with severe enough blow to the heart can initiate a coronary thrombosis." There was no testimony offered as to the severity of the blow received by the decedent when he fell from the truck but from the evidence the board was justified in inferring that considering the distance from the seat to the ground and the force of the impact that the fall to the ground was severe. Following the testimony, the attorney for the claimant-respondent in a conference between the referee and the other interested parties suggested that the medical testimony be presented to a pathologist or specialist because of the dispute between the doctors as to the length of time necessary for the formation of the thrombosis, which suggestion was not followed. There was a sharp medical question of fact presented for the determination of the board concerning the length of time for the formation of a thrombosis which was from more than 48 hours to 6 weeks. It is apparent from the findings that the board found causal relation between the cause of death on July 31 and the accident on July 1, which was a question of fact substantiated by sufficient evidence. It might well be argued that there was better evidence to sustain the findings made by the referee of no causal relationship or that an impartial specialist's testimony would be helpful in arriving at a proper determination. These were questions which come within the sole purview of the board and the decision should be affirmed. We have recently held that the entire issue of causal relation was one of fact and the board had the right to make its choice as to which medical opinion it would accept. (*Matter of Reilly* v. *Consolidated Edison Co.*, 5 A D 2d 1027; *Matter of Wachsstock* v. *Skyview Transp. Co.*, 5 A D 2d 1028.) In this case the medical testimony accepted by the board is not incredible as a matter of law. (*Matter of Peirano* v. *Brooks Transp. Co.*, 1 A D 2d 713.) Award affirmed, with costs to the Workmen's Compensation Board. Bergan, J. P., Gibson and Herlihy, JJ., concur; Reynolds, J.: I dissent and vote to reverse and remit on the ground that in my opinion there is no substantial evidence in the record to show causal relation between the accident and the heart condition.